# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| TIMMY PHOVEMIRE, | ) |
|     Plaintiff, | ) ) ) |
| v. | )   CAUSE NO. 1:08-CV-00248 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

## OPINION AND ORDER

Plaintiff Timmy Phovemire, who is proceeding *pro se*, appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI").[1] (*See* Docket # 1.) For the reasons set forth herein, the Commissioner's decision will be AFFIRMED.[2]

## I. PROCEDURAL HISTORY

Phovemire protectively applied for SSI on March 30, 2005, alleging disability as of June 20, 2001. (Tr. 53.) The Indiana State Agency denied Phovemire's application initially and upon reconsideration, and Phovemire requested an administrative hearing. (Tr. 38, 45-49.) On February 20, 2008, Administrative Law Judge ("ALJ") Frederick McGrath conducted a hearing at which Phovemire and a vocational expert testified. (Tr. 438-51.) On April 4, 2008, the ALJ

---

[1] Phovemire apparently also applied for Disability Insurance Benefits, but this Opinion and Order only concerns his SSI application. Phovemire's insured status expired on December 31, 2001, and he has previously filed applications for disability, which were denied. In particular, the State Agency ruled against Phovemire on January 6, 2004, subsequent to the expiration of his insured status. (*See* Tr. 427.) Consequently, Phovemire could no longer claim disability under Title II of the Act when he filed his applications in April 2005, and the Administrative Law Judge properly addressed only Phovemire's SSI application.

[2] All parties have consented to the Magistrate Judge. *See* 28 U.S.C. § 636(c).

rendered an unfavorable decision to Phovemire, concluding that he was not disabled because despite the limitations caused by his impairments he could perform his past relevant work as security guard. (Tr. 13-19.) The Appeals Council denied Phovemire's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5.) Accordingly, Phovemire filed a *pro se* complaint with this Court on October 22, 2008, seeking relief from the Commissioner's final decision. (Docket # 1.)

From what can be determined from Phovemire's filings, his position seems to be that the ALJ should have found him to be disabled because of his treatment history and the fact that his doctors have told him he cannot work. (*See* Docket ## 13, 20.)

## II. FACTUAL BACKGROUND[3]

### A. *General Background*

Phovemire was fifty-five years old at the time of the ALJ's decision. (*See* Tr. 53.) He has an eighth grade education and has experience in food service, as a security guard, and as a forklift driver. (Tr. 61, 75.) In his Disability Report, Phovemire alleged disability due to heart attacks. (Tr. 74.)

### B. *Summary of Relevant Medical Evidence*

Phovemire presented to St. Joseph Hospital in Fort Wayne, Indiana, on July 31, 2002, complaining of non-healing wounds on his left leg. (Tr. 184.) The impression was peripheral vascular disease, complex left leg wound with exposed achilles tendon, coronary artery disease, diabetes mellitus, hypertension, hyperlipidemia, obesity, and metabolic encephalopathy by history. (Tr. 185.) The following day, Phovemire underwent an abdominal angiogram, pelvic

---

[3] In the interest of brevity, this opinion only recounts the portions of the 451 page administrative record that are necessary to the decision.

arteriograms, and bilateral lower extremity runoff arteriograms.  (Tr. 180.)  The results of these exams led Phovemire to undergo a percutaneous transluminal angioplasty of the left common femoral, profunda, and a graft at the origin of the graft for 90% stenosis.  (Tr. 182.)  The procedure reduced the 90% stenosis to 0%.  (Tr. 182.)

A progress note dated September 6, 2002, indicates that Phovemire reported smoking a pack-and-a-half of cigarettes a day for 30 years.  (Tr. 128.)  Phovemire was diagnosed with tobacco abuse and bronchitis.  (Tr. 128.)  In October 2003, Phovemire was admitted to the telemetry unit at St. Joseph Hospital for complaints of shortness of breath for a month.  (Tr. 177, 179.)  Tests ruled out a myocardial infarction.  (Tr. 177.)  Phovemire was given high doses of intravenous diuretics, and his weight was reduced from 240 pounds to 229 pounds by discharge three days later.  (Tr. 177, 179.)  He experienced substantial improvement in breathing, and his lower extremity edema was resolved.  (Tr. 177.)  He had no further shortness of breath, was comfortable on room air, and was independently ambulatory and stable for discharge to home in three days after admission.  (Tr. 177.)  Phovemire was put on a diet and was told to participate in activities as tolerated.  (Tr. 177.)  The discharge diagnoses were congestive heart failure, ascites, peripheral vascular disease, coronary artery disease (type II), hypertension, hyperlipidemia, and obesity.  (Tr. 177.)  Chest x-rays conducted a few weeks later showed no evidence of new pulmonary process.  (Tr. 402.)

Then on December 22, 2002, Phovemire presented to Lutheran Hospital reporting chest pain radiating into his left arm.  (Tr. 241, 256-60.)  Tests ruled out myocardial infarction but revealed 2-vessel disease.  (Tr. 247, 277-79.)  Angioplasty and stenting of Phovemire's left anterior descending artery was performed with good results.  (Tr. 247, 260.)  Overnight,

Phovemire had no further chest pain, no arrhythmias, and his heart rate and blood pressure remained stable. (Tr. 247, 260.) Phovemire was stable and discharged for home the next day. (Tr. 247, 260.) He was re-admitted to the hospital, however, just a few days later on December 26 for complaints of chest pain. (Tr. 239, 242-46.) This time, Phovemire was ruled in for a microinfarct. (Tr. 239.) Chest x-rays revealed that his heart was normal but his lungs were hyperinflated, compatible with chronic obstructive pulmonary disease ("COPD"). (Tr. 253.) Elevated lab work also suggested a possible underlying problem. (Tr. 239, 254-55.) The attending physician noted that Phovemire demanded to be discharged because of a family situation, and he was advised to undergo an outpatient cardiac catheterization. (Tr. 239-40.) The discharge diagnosis was Non-Q-Wave myocardial infarction, coronary artery disease, hypertension, hyperlipidemia, and chronic obstructive pulmonary disease. (Tr. 239.)

On December 29, 2003, J. Corcoran, M.D., a State Agency physician, reviewed the record and opined that Phovemire could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in his ability to push and/or pull with his extremities. (Tr. 155.)

On May 26, 2004, x-rays of Phovemire's lumbosacral spine revealed mild degenerative disc disease at L2-3. (Tr. 398.) Then that July Phovemire presented to Lutheran Hospital with complaints of back pain after falling and hitting his ribs at home. (Tr. 228, 234.) Chest x-rays were essentially negative, and he was prescribed medication. (Tr. 234, 36.) Two days later, Phovemire returned to the hospital again complaining of back pain. (Tr. 228.) CT scans of his abdomen and pelvis were essentially unremarkable. (Tr. 230-31.) The diagnosis was right lower thoracic back pain. (Tr. 229.)

4

Phovemire presented to Lutheran Hospital on August 16, 2004, with complaints of left leg pain. (Tr. 225.) Following a physical examination, the attending physician's impression was left leg pain and rule out left sciatica. (Tr. 226.)

Phovemire then visited the emergency room of St. Joseph Hospital on November 9, 2004, complaining of left-sided midsternal chest pain without any radiation for the past three days. (Tr. 167.) Phovemire reported that he had been on nitroglycerin but had not taken any because he could not afford it, and that he was smoking a pack-and-a-half of cigarettes a day even though he was not doing well. (Tr. 167.) On physical examination, Phovemire was alert and oriented and appeared to be in no acute distress. (Tr. 167.) His lung sounds were clear and his heart had a normal rate and rhythm. (Tr. 167, 169.) An EKG did not reveal any acute changes (Tr. 168), chest x-rays showed no acute distress (Tr. 170, 173), and a CT scan of his chest was negative (Tr. 213). The doctor's impression was bronchitis and pleurisy. (Tr. 170.)

Phovemire again visited the emergency room on November 14 and 15, 2004, reporting chest pain. (Tr. 214-19.) A cardiac workup was "totally negative", and chest x-rays showed mild COPD, but nothing else of an acute nature. (Tr. 217, 221.) He was diagnosed with chest pain, pleurisy, and bronchitis, and prescribed an inhaler and other medications. (Tr. 217, 219.) Follow-up tests were normal. (Tr. 213.) Phovemire was also evaluated by David E. Schleinkofer, M.D., F.A.C.C., on November 16, 2004, whose impression was new onset atypical chest discomfort and cardiac risk factors – probable hypertension, positive family history, and positive tobacco use. (Tr. 328-29.) He recommended a stress test and prescribed Phovemire medication. (Tr. 329.)

Phovemire next presented at the hospital on December 9, 2004, complaining that he had

5

chest pain for four weeks. (Tr. 206.) The attending physician noted that Phovemire's pain was pleuritic and worsened when he took a deep breath or coughed. (Tr. 206.) Upon examination, his heart had a regular rate and rhythm and his extremities were free from abnormalities. (Tr. 206.) Lab work was within normal limits but chest x-rays showed severe emphysema. (Tr. 206, 209-10.) He returned to the hospital at the end of December for chest pain and shortness of breath. (Tr. 198.) On physical examination, Phovemire's lungs were clear, but there were decreased breath sounds consistent with COPD. (Tr. 199.) His extremities revealed no abnormalities. (Tr. 199.) An EKG showed no acute changes from previous EKGs (Tr. 199, 201), chest x-rays were unremarkable, cardiac enzymes were negative, and chemistry was negative (Tr. 200, 202-04). Phovemire was diagnosed with chest pain, resolved, and he was discharged in good condition and prescribed pain medication. (Tr. 199, 289.) He would return to the hospital for chest pain again in April 2005. (Tr. 188-89.) He was diagnosed with pleuritic chest pain and told to follow up with Fort Wayne Cardiology. (Tr. 189.)

Phovemire visited Fort Wayne Cardiology on April 11, 2005. (Tr. 325.) His heart had a normal rate and rhythm and respirations were non-labored. (Tr. 325.) He was instructed to use his nitroglycerine patch and he refused to use any other medication. (Tr. 326.) Phovemire underwent a myoview study on his heart on April 14, 2005, which showed a moderate area of ischemia in the inferoseptal region. (Tr. 323-24.) On May 12, 2005, Phovemire returned to Fort Wayne Cardiology for follow-up and reported daily chest pain with activity. (Tr. 317.) The doctor ordered a left heart catheterization for the following day. (Tr. 318.) Phovemire therefore underwent cardiac catheterization and coronary angiography with stent placement on May 13, 2005. (Tr. 378-95.) He was discharged on May 14, 2005, and restricted from lifting over 10

pounds, from driving until May 15, and from smoking. (Tr. 313.)

A chest x-ray taken on August 23, 2005, was normal. (Tr. 375.)

Farbat Usman, M.D., evaluated Phovemire on September 17, 2005. (Tr. 332-33.) On physical examination, Dr. Usman reported that Phovemire's lungs were clear to auscultation and his breath sounds were symmetrical. (Tr. 333.) The doctor also observed that Phovemire had a regular heart rate and rhythm. (Tr. 333.) Dr. Usman further noted that Phovemire's gait and station were normal without the use of an assistive device and that he was able to walk on his toes and heels. (Tr. 333.) Straight-leg-raise testing was negative for radicular symptoms bilaterally. (Tr. 333.) Neurologically, his cranial nerves were intact, muscle strength was full, deep tendon reflexes were normal and symmetric, and fine finger manipulation was normal. (Tr. 333.) Dr. Usman opined that Phovemire "has no problems sitting and standing and is able to walk about two to three blocks at a time." (Tr. 333.) He further wrote that Phovemire "has no problems handling objects. He has some difficulty carrying objects for long distances due to shortness of breath." (Tr. 333.) Dr. Usman stated, "[i]t is my opinion he is able to stand and walk for two hours in an eight-hour day[.]" (Tr. 333.)

Phovemire presented to the emergency room on November 20, 2005, with complaints of chest pain. (Tr. 359.) The ambulance crew gave him a nitroglycerine spray and his pain went away. (Tr. 359.) The doctor noted that Phovemire continued to smoke a pack of cigarettes a day and that he had not been able to afford his cardiac medications. (Tr. 359, 361.) On examination, Phovemire's heart had a regular rate and rhythm, his lungs were clear, and his extremities showed no abnormalities. (Tr. 359, 362.) An EKG also showed normal sinus rhythm, and chest x-rays were clear. (Tr. 360, 362.) Phovemire's diagnosis was acute chest pain, most likely

7

unstable angina, and he was prescribed aspirin and heart medication and counseled on tobacco cessation. (Tr. 360, 362.)

On November, 21, 2005, J. Sands, M.D. (Tr. 419), a State Agency reviewing physician, reviewed the evidence of record and opined that Phovemire could perform a full range of medium work, meaning that he can lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in his ability to push and/or pull with his extremities. (Tr. 409.)

On February 9, 2006, R. Wenzler, M.D., a State Agency physician, reviewed the evidence of record on February 9, 2006, and opined that Phovemire could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and was unlimited in his ability to push and/or pull with his extremities. (Tr. 427.) He also opined that Phovemire could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 428.) In addition, he found that Phovemire should avoid concentrated exposure to extreme heat and cold, wetness, and fumes, odors, fumes, gases, and poor ventilation. (Tr. 430.)

In June 2006, Richard Jaily, M.D., stated that Phovemire was totally disabled with severe coronary artery disease and would be so for the rest of his life. (Tr. 284.)

### III. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Court's task is limited to determining whether the ALJ's factual findings are

8

supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). Nonetheless, "substantial evidence" review should not be a simple rubber-stamp of the Commissioner's decision. *Clifford*, 227 F.3d at 869.

## IV. ANALYSIS

### A. The Law

Under the Act, a plaintiff is entitled to SSI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to . . . last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's

9

impairment meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant is unable to perform his past work; and (5) whether the claimant is incapable of performing work in the national economy.[4] *See* 20 C.F.R. § 416.920; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled. *Id.* The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Id.* at 885-86.

## B. The ALJ's Decision

On April 4, 2008, the ALJ rendered his opinion. (Tr. 13-20.) He found at step one of the five-step analysis that Phovemire had not engaged in substantial gainful activity since his amended onset date, and at step two, that Phovemire had the following severe impairments: coronary artery disease, hypertension, congestive heart failure, peripheral vascular disease, and adult-onset diabetes mellitus (type II). (Tr. 15.) At step three, he determined that Phovemire's impairments were not severe enough to meet a listing. (Tr. 15.) Before proceeding to step four, the ALJ determined that Phovemire's testimony concerning the intensity, persistence, and limiting effects of his symptoms was not credible to the extent they are inconsistent with the RFC. (Tr. 18.) The ALJ assigned him an RFC "to perform the full range of light work as defined in 20 CFR [§] 416.967(b) and he should avoid concentrated exposure to fumes, odors,

---

[4] Before performing steps four and five, the ALJ must determine the claimant's residual functional capacity ("RFC") or what tasks the claimant can do despite his limitations. 20 C.F.R §§ 416.920(e), 416.945. The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of. 20 C.F.R. §§ 416.920(e), 416.945(a)(5).

dust, gases, chemicals, extreme heat, extreme cold and high humidity." (Tr. 15.)

Based on this RFC, the ALJ concluded at step four that Phovemire was capable of performing his past relevant work as a security guard. (Tr. 19.) Therefore, Phovemire's claim for SSI was denied. (Tr. 19.)

### *B. The ALJ Properly Analyzed the Physicians' Opinions*

Phovemire essentially argues that because his physicians have told him that he is disabled, the ALJ incorrectly determined that he was not. (*See* Docket ## 13, 20.) Phovemire's argument fails to warrant a remand of this case.

To begin, and centering on Phovemire's attack on the Commissioner's position, a claimant is *not* entitled to SSI simply because his treating physician states that he is "unable to work" or "disabled," *Clifford*, 227 F.3d at 870; the determination of disability is reserved to the Commissioner. *Id.*; *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995); *see also* 20 C.F.R. § 416.927(e)(1). Contrary to Phovemire's logic, then, simply because his physicians told him he was disabled does not mandate such a finding by the Commissioner.

With respect to the ALJ's evaluation of the opinion evidence as a whole, the Seventh Circuit Court of Appeals has stated that "more weight is generally given to the opinion of a treating physician because of his greater familiarity with the claimant's conditions and circumstances." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 416.927(d)(2). However, this principle is not absolute, as a "treating physician's opinion regarding the nature and severity of a medical condition is [only] entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Clifford*, 227 F.3d at 870; *see also* 20 C.F.R. § 416.927(d)(2); *Johansen v. Barnhart*, 314 F.3d 283, 287 (7th Cir.

2002).

Here, when evaluating the opinion evidence, the ALJ actually *credited* the treating physicians, giving their opinions more weight than the opinion of the State Agency doctor, Dr. Sands, who determined that Phovemire could perform medium work. The ALJ explained, "While [the State Agency physicians'] opinions are reasonably based on the evidence available at that time, additional evidence received into the record at the hearing level convinces the [ALJ] that the claimant is more limited than originally determined by the State Agency non-examining medical consultants." (Tr. 19.) The ALJ then "concur[red] with the [State Agency consultant, Dr. Wenzler's] finding that the claimant has the ability to perform light work" and articulated that "[g]reater weight was placed on the opinions of the physicians that saw, examined, and treated the claimant, over that of the State Agency doctors who never saw the claimant." (Tr. 19.)

And indeed, as the ALJ's opinion reveals, the medical evidence of record substantially supports the ALJ's conclusion that Phovemire can perform light work with some limitations.[5] As noted above, Dr. Wenzler opined on February 9, 2006, that Phovemire could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk about 6 hours in an 8-hour workday; sit for about 6 hours in an 8-hour workday; was unlimited in his ability to push and/or pull with his extremities; could occasionally climb, balance, stoop, kneel, crouch, and crawl; and

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b).

12

should avoid concentrated exposure to extreme heat and cold, wetness, and fumes, odors, fumes, gases, and poor ventilation. (Tr. 427-30.) Moreover, the ALJ thoroughly explored Dr. Usman's September 17, 2005, report about Phovemire's chest pain and his opinion that Phovemire "has no problems sitting and standing and is able to walk about two to three blocks at a time[;]" that he "has no problems handling objects" although he "has some difficulty carrying objects for long distances[;]" and that he "has no mental impairment." (Tr. 333; *see* Tr. 17-18.)

Furthermore, this is not an instance where the ALJ has failed to consider a physician's opinion or other medical evidence in the claimant's favor. *See, e.g., Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (emphasizing that an ALJ must not ignore evidence which contradicts his opinion, but must evaluate the record fairly); *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (noting that the ALJ "must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position"). The ALJ adequately considered the medical evidence, including Phovemire's records from St. Joseph Hospital, Lutheran Hospital, Caylor Nickel Clinic, Fort Wayne Cardiology, and Parkview Hospital, penning *over two pages* on Phovemire's treatment history. (*See* Tr. 16-19.) While this evidence chronicles Phovemire's cardiac and breathing problems, it does not obviously contradict the ALJ's conclusion that Phovemire nevertheless remains capable of performing light work.

In fact, the ALJ also *specifically considered* the only opinion of record that flat out opposes the ALJ's determination: Dr. Jaily's June 2006 opinion statement that Phovemire is disabled with coronary artery disease and will be for the rest of his life. (Tr. 17-18.) However, as noted *supra*, that determination of disability is reserved to the Commissioner, *see* 20 C.F.R. § 416.927(e)(1)*; Clifford*, 227 F.3d at 870, and moreover, the cursory statement is without an

explanation or evidence to support it. *See, e.g, Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) ("The treating physician's opinion is important because that doctor has been able to observe the claimant over an extended period of time, but it may also be unreliable if the doctor is sympathetic with the patient and thus 'too quickly find[s] disability.'" (citing *Stephens v. Heckler*, 766 F.2d 284, 289 (7th Cir. 1985))). In short, it is the ALJ's responsibility, not the Court's, to resolve conflicts in the medical evidence, and here the ALJ adequately did so. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (stating that the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner"). The Court will not accept Phovemire's invitation to reweigh the evidence of record. *See id*. ("[The Court's] task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.").[6]

Accordingly, the ALJ's evaluation of the physicians' opinions will stand.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's decision will be AFFIRMED. The Clerk

---

[6] In his briefs, Phovemire references treatment from doctors that occurred after the ALJ's determination on April 4, 2008, such as treatment from Dr. Chilakamarri in January 2009, Dr. Reddy in 2009, and Dr. Coats in 2009. (Docket ## 13, 20.) However, as the Commissioner correctly notes, this Court "is limited to the administrative record before the ALJ." *Reese v. Astrue*, 1:07-cv-1663-WTL-JMS, 2009 WL 499601, at *8 (S.D. Ind. Feb. 27, 2009); *see also* 42 U.S.C. § 409(g); *Mathews v. Weber*, 423 U.S. 261, 263, 270 (1976). It does not appear that Phovemire is requesting a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), since he did not submit into evidence the records of the recent treatment and makes no argument on the point. *See* 42 U.S.C. § 405(g) (permitting a remand to consider additional evidence "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding"). In any event, without such records, the Court is not in a position to determine if the evidence discussed would be new and material. *See Schmidt*, 395 F.3d at 742 ("Evidence is 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding'."); *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (explaining that new evidence is "material" if "there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered"). Consequently, Phovemire's assertions based upon evidence not before the ALJ fail.

14

is directed to enter a judgment in favor of the Commissioner and against Phovemire.

SO ORDERED.

Enter for this 27th day of July, 2009.

S/Roger B. Cosbey  
Roger B. Cosbey,  
United States Magistrate Judge